NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| **LOUIS DIODATO, III,**<br><br>Plaintiff,<br><br>v.<br><br>**CONNECTICUT GENERAL LIFE INSURANCE COMPANY, et al.,**<br><br>Defendants. | Civil Action No. 09-3532 (FLW)<br><br>REPORT & RECOMMENDATION |

**BONGIOVANNI, Magistrate Judge**

This matter comes before the Court upon Defendants Thomas J. Dichiara, Esq., and Drazin & Warshaw, P.C.'s (collectively, "D&W") motion to dismiss this action or, in the alternative, remand it to state court for lack of subject matter jurisdiction. The Court has reviewed all arguments made in support of and in opposition to D&W's motion and considers same without oral argument pursuant to FED.R.CIV.P. 78. For the reasons set forth more fully below, the Court recommends that D&W's motion be granted and this matter be remanded to state court.

**I.      Procedural History and Background**

On January 21, 1997, Plaintiff, a licensed chiropractic physician, obtained a long-term disability insurance policy (the "Policy") issued by Connecticut General Life Insurance Company ("Connecticut General") through Southern Medical Association and SMA Services, Inc.

("SMA").[1]  After obtaining the Policy, Plaintiff underwent several surgeries to treat injuries he sustained to his back, left shoulder and right knee.  After the surgeries were performed, the surgeon certified that Plaintiff was unable to work as a chiropractor.  As a result, Connecticut General paid disability benefits to Plaintiff under the Policy.

In November 2003, pursuant to its rights under the Policy, Connecticut General requested that Plaintiff undergo a Function Capacity Evaluation ("FCE") to determine if he continued to be totally disabled.  The requested FCE was conducted on December 18, 2003 by a physical therapist hired by Connecticut General.  Based on the results of the FCE, Connecticut General determined that Plaintiff was capable of sedentary work activities if given periodic rest breaks and, thus, not totally disabled.  As a result, Connecticut General, by letter dated February 2, 2004, terminated Plaintiff's long-term disability benefits under the Policy.  Plaintiff appealed Connecticut General's decision on March 22, 2004.  Connecticut General affirmed its decision on June 22, 2004.  In September 2004 Plaintiff requested that Connecticut General review its denial of his appeal.

Plaintiff claims that SMA transferred his policy to Standard Insurance Company ("Standard") without his knowledge.  Plaintiff alleges that he never received SMA's letter dated November 17, 2000 explaining changes in his insurance carrier and that neither Connecticut General nor SMA notified him that the monthly benefits available under the transferred policy would be limited to $1,753.34 rather than $8,000 under the Policy.  Plaintiff also alleges that SMA, despite knowing that the Policy combined coverage of both loss of income with business

---

[1]The Court uses the phrase "Connecticut General" to also refer to Defendants CIGNA Insurance Group and CIGNA Disability Management Solutions as these two defendants are not separate legal entities but merely service marks owned by Connecticut General.

overhead expenses, did not advise Plaintiff of the availability of this coverage from Standard when SMA transferred Plaintiff's coverage from Connecticut General to Standard.

On May 26, 2009, approximately five years after Connecticut General's termination of Plaintiff's long-term disability benefits, Plaintiff filed suit in the Superior Court of New Jersey against Connecticut General, SMA and Standard. Plaintiff initially brought breach of contract and bad faith claims against Connecticut General as well as claims for reformation of the Standard policy to provide monthly benefits consistent with the Policy and claims against SMA and Standard seeking payment of $6,246.26 per month from March 7, 2008 (when Standard began making long-term disability payments) through the judgment of the matter, $8,000 per month thereafter for as long as Plaintiff remains disabled and reimbursement of all premiums paid between April 2004 and March 2008. In July 2009, with the consent of all defendants, Plaintiff's case was removed to this Court based on diversity of citizenship under 28 U.S.C. §§ 1332 & 1441.

On November 6, 2009, the District Court dismissed all of Plaintiff's claims against Connecticut General, determining that they were barred by the applicable three-year statute of limitations. Thereafter, Plaintiff moved to amend his Complaint in order to add, among other things, malpractice claims against D&W based on D&W's failure to advise Plaintiff of the three-year statute of limitations for filing suit against Connecticut General and failure to, in fact, file such an action within the limitations period. While the Court permitted Plaintiff to make other amendments, the Court initially denied Plaintiff's request to add claims against D&W. In so doing, the court determined that the joinder of D&W was not necessary under New Jersey's Entire Controversy Doctrine and that permissive joinder was not appropriate because Plaintiff's

claims against D&W did not arise out of the same transaction or occurrence giving rise to his other claims, nor was there a question of law or fact common to all defendants.  The Court also found that it would be unfairly prejudicial to the other parties to permit Plaintiff to proceed with its claims against D&W.  On July 13, 2010, the same date the Court granted in part and denied in part Plaintiff's motion to amend his Complaint, the Court also granted both SMA and Standard's motions to amend their Answers.  Among the many amendments made, both SMA and Standard added a failure to mitigate defense against Plaintiff.  SMA and Standard's failure to mitigate defenses arose from Plaintiff's failure to file a complaint against Connecticut General with the three-year limitations period.

In light of the addition of SMA and Standard's failure to mitigate defenses, Plaintiff sought permission to file a Second Amended Complaint to assert the previously disallowed joinder of D&W.  On January 15, 2011, the Court determined that given SMA and Standard's failure to mitigate defenses, permissive joinder of D&W was appropriate under FED.R.CIV.P. ("Rule") 20 and that their joinder would no longer be prejudicial to the other parties.  In permitting Plaintiff to add D&W as defendants, the Court specifically noted that "there is some concern that the addition of [D&W] could potentially divest the Court of diversity jurisdiction." (1/15/11 Letter Op. & Order at 10, n.2).  The Court, however, also explicitly determined that "said concerns do not warrant denying Plaintiff's motion to amend. (*Id*).  As such, the Court allowed Plaintiff to join D&W as defendants and made no findings with respect to "whether jurisdiction shall be retained over this matter." (*Id.*)

D&W now seek to have Plaintiff's Second Amended Complaint dismissed or, in the alternative, remanded to the Superior Court of New Jersey based on the existence of non-diverse

4

parties.  Specifically, D&W argue that this Court lacks subject matter jurisdiction because both Plaintiff and D&W are citizens of New Jersey for jurisdiction purposes.[2]  Given the joinder of non-diverse parties, D&W contends that diversity jurisdiction no longer exists under 28 U.S.C. § 1332(a)(1) and that, as such, this matter should be dismissed pursuant to Rule 12(h)(3).  In the alternative, D&W argues that this matter should be remanded pursuant to 28 U.S.C. § 1447(e), which "specifically provides for remand in the event a non-diverse defendant is joined subsequent to removal."  (D&W Br. at 4).

Plaintiff acknowledges that D&W's joiner divests this Court of diversity jurisdiction. However, he disagrees that dismissal of the action is an appropriate remedy.  Instead, Plaintiff claims that 28 U.S.C. § 1447(e) "mandates that this case be remanded."  (Pl. Letter Br. at 1). Indeed, Plaintiff argues that the remand statute "does not provide or allow for the dismissal of a remanded case."  (*Id*.)

SMA and Standard oppose D&W's motion arguing that pursuant to Rule 21, the Court should dismiss D&W, the dispensable, non-diverse parties, from this lawsuit to preserve jurisdiction.[3]  They argue that "[g]enerally, the addition of a nondiverse party that is not indispensable to the litigation does not destroy subject matter jurisdiction" and claim that "this general principal admits to 'at least one exception, as 28 U.S.C. § 1447(e) provides that if after

---

[2]In this regard, D&W claim that Mr. DiChiara is a resident of the state of New Jersey and "Drazin & Warshaw, P.C. is a professional corporation organized under the laws of the state of New Jersey and maintaining its principal place of business in New Jersey."  (D&W Br. at 2).

[3]SMA and Standard have also separately moved for reconsideration of the Court's Letter Opinion and Order granting Plaintiff permission to join D&W as defendants in this matter.  The Court denies SMA and Standard's motion for reconsideration as it is untimely under L.Civ.R. 7.1(I).

5

removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the state court.'" (SMA & Standard Br. at 4 (quoting *Kabukjian v. U.S.*, 267 F.3d 208, 212 (3d Cir. 2011) (internal quotation marks omitted))).

SMA and Standard argue that at the time the Court permitted the joinder of D&W their citizenships were unknown. Indeed, SMA and Standard claim that it was not until D&W submitted affidavits in conjunction with the instant motion to dismiss that it became clear that they are citizens of New Jersey. SMA & Standard contend that since it is now clear that D&W's joinder divests the Court of diversity jurisdiction, the Court "must conduct its jurisdictional inquiry pursuant to 28 U.S.C. § 1447(e) to determine whether these diversity-destroying defendants should be dropped" as permitted by Rule 21. (*Id*. at 5).[4] In this regard, SMA & Standard contend that the Court should consider whether D&W's joinder is appropriate under the factors set forth by the Fifth Circuit in *Hensgens v. Deer & Co.*, 833 F.2d 1179, 1182 (5th Cir. 1987), *cert. denied*, 493 U.S. 851, 110 S.Ct. 150, 107 L.Ed.2d 108 (1989). These factors include: "the extent to which the purpose of the amendment is to defeat federal jurisdiction; (2) whether plaintiff has been dilatory in asking for amendment; (3) whether plaintiff will be significantly injured if amendment is not allowed; and (4) any other factors bearing on the equities." (SMA and Standard Br. at 6 (quoting *Salamone v. Carters Retail, Inc.*, Civil Action No. 09-5856

---

[4]SMA and Standard note that normally this analysis takes place in the context of a motion to amend and remand. However, SMA and Standard argue that it is appropriate for the Court to engage in this analysis now because at the time Plaintiff moved to amend to join D&W, Plaintiff did not allege the citizenship of D&W and the Court specifically "'took no position on whether jurisdiction shall be retained over this matter.'" (*Id*. (quoting 1/5/11 Letter Op. & Order at 10, n.2)).

(GEB), 2010 WL 762192, *3 (D.N.J. March 5, 2010) (citing *Hensgens*, 833 F.2d at 1182) (internal quotation marks omitted))).

SMA and Standard argue that the *Hensgens* factors favor dropping D&W as parties to this lawsuit and denying remand. Specifically, SMA & Standard claim that, as even Plaintiff acknowledges, this matter has been pending for twenty months. SMA and Standard argue that "remand at this point would cause further delay and disrupt a case that is poised for resolution." (*Id*. at 7). SMA and Standard contend that they have invested significant resources into this litigation, including filing a motion for summary judgment that has not yet been decided by the Court. They argue that it would be "inefficient to remand the entire case and require the parties to relitigate the same issues over again." (*Id*. at 8). SMA and Standard claim that if the matter is remanded they "will have to bear the costs and expense of a 'do-over' for Plaintiff in state court and there are obvious costs to the judicial system in rehearing issues and disputes that have been resolved." (*Id*.) SMA and Standard note that the Court originally denied Plaintiff's request to add D&W as defendants finding their joinder to be prejudicial because it would "surely result in Defendants having to spend more time and money litigating this matter[.]" (*Id*. (quoting 7/13/10 Order at 9-10)). As such, SMA and Standard contend that the *Hensgens* factors weigh against joinder and remand. Consequently, they claim that D&W should be dropped from this case pursuant to Rule 21 so that federal jurisdiction is preserved.

D&W do not object to SMA and Standard's request to drop D&W from this lawsuit to preserve jurisdiction over the original dispute between Plaintiff, SMA and Standard. D&W does, however, object to SMA and Standard's suggestion that the Court may retain jurisdiction over Plaintiff's claims against D&W, which destroy diversity of citizenship. D&W also disagrees

with Plaintiff's argument that the entire case must be remanded. In this regard, D&W argues that, as set forth by SMA and Standard, the "Court has the discretion to retain jurisdiction over the original dispute as it existed prior to [D&W's] permissive joinder." (D&W Reply Br. at 2).

## II.  Discussion

Subject matter jurisdiction in this case is based on 28 U.S.C. § 1332(a)(1), diversity of citizenship. At the time Plaintiff filed this lawsuit, the parties' citizenships were as follows: Plaintiff was a citizen of New Jersey, Connecticut General of Pennsylvania, SMA of Alabama and Standard of Oregon.[5] Given the diversity among the parties, SMA and Standard removed Plaintiff's case to this Court pursuant to 28 U.S.C. §1441 in July 2009. On January 5, 2011, the Court permitted Plaintiff to join D&W as defendants. At the time the Court permitted their joinder, the citizenships of D&W were unclear; though the Court recognized that "some concern" existed "that the addition of [D&W] could potentially divest the Court of diversity jurisdiction." (1/5/11 Letter Op. and Order at 10, n.2). The Court then explicitly found that the aforementioned "concerns do not warrant denying Plaintiff's motion to amend." (*Id.*) In so doing, the Court took no position on "whether jurisdiction shall be retained over this matter." (*Id.*)

In filing the pending motion to dismiss or, in the alternative, to remand, D&W disclosed that they are citizens of New Jersey. Their joinder therefore destroys diversity jurisdiction, a point that no party disputes. Pursuant to 28 U.S.C. § 1447, "[i]f after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the Court may deny joinder, or permit joinder and remand the action to the State court." Given the Court's

---

[5]Nothing has since changed in this regard.

joinder of D&W, absent a decision to dismiss them from the case, this matter must be remanded to state court pursuant to the aforementioned remand statute.

While the Court agrees with Plaintiff that it would be inappropriate for it to dismiss this suit in its entirety, the Court agrees with SMA, Standard and D&W that Rule 21 invests the Court with authority to dismiss D&W from this case.  As the United States Supreme Court acknowledged in *Newman-Green, Inc. v. Alfanzo-Larrain*: "it is well settled that Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time[.]" 490 U.S. 826, 832, 109 S.Ct. 2218, 104 L.Ed.2d 893 (1989).  The question that remains is whether D&W should be dismissed from this action or whether this matter should be remanded to state court.

SMA and Standard, with no objection from D&W, contend that D&W should be dropped from this lawsuit to preserve this Court's jurisdiction over Plaintiff's case.  In reaching this conclusion, SMA and Standard argue that the Court should review D&W's joinder under the factors set forth in *Hensgens*, which they claim militate against joining D&W as defendants.  SMA and Standard acknowledge that a court generally engages in the *Hensgens* analysis in the context of a motion to amend and remand, but claim that it is appropriate for the Court to examine the *Hensgens* factors at this time, even though Plaintiff's motion to amend has already been granted, because at the time Plaintiff moved to amend to join D&W, Plaintiff did not allege D&W's citizenships.  As a result, SMA and Standard argue that the Court permitted the joinder of D&W without considering the *Hensgens* factors and, in so doing, took "no position on whether jurisdiction shall be retained over this matter." (1/5/11 Letter Op. and Order at 10, n.2).

9

While the *Hensgens* factors were not explicitly referenced in the Court's January 5, 2011 Opinion, the Opinion suggests that the Court considered the possibility that the joinder of D&W could divest the Court of subject matter jurisdiction and decided to nevertheless grant Plaintiff's motion. While SMA and Standard focus on the fact that the Court took "no position on whether jurisdiction shall be retained over this matter[,]" SMA and Standard's reliance on this quote is somewhat misplaced as the quote is taken out of context. The entirety of the Court's statement follows:

> The Court also recognizes that there is some concern that the addition of Plaintiff's former attorneys could potentially divest the Court of diversity jurisdiction. The Court finds that these concerns do not warrant denying Plaintiff's motion to amend. Further, this Court takes no position on whether jurisdiction shall be retained over this matter.

(*Id.*) As is clear from the aforementioned text, the Court was aware of concerns that the joinder of D&W could divest the Court of subject matter jurisdiction and granted Plaintiff's motion anyway. As such, the Court did not permit the joinder of D&W without any regard to SMA and Standard's desire to proceed in this forum. This alone could serve as a basis for simply remanding this matter to state court without engaging in an explicit *Hensgens* analysis as requested by SMA and Standard. Nevertheless, given the fact that at the time the Court granted Plaintiff's motion to amend it was unclear that D&W's joinder would definitively divest this Court of subject matter jurisdiction, the Court shall engage in a *Hensgens* analysis at this juncture to determine whether the continued joinder of D&W is appropriate or, in light of the fact that their joinder divests this Court of diversity jurisdiction, D&W should be dropped from this lawsuit pursuant to Rule 21.

    **A.**    <u>**Standard of Review**</u>

Even where joinder would require the Court to remand an action back to state court, courts may permit joinder of a dispensable, nondiverse party to a removed case. 28 U.S.C. § 1447(e). However, where a motion to amend involves a plaintiff's request to join a dispensable, nondiverse party, which if granted will deprive the federal court of subject matter jurisdiction, said motion should be scrutinized more closely than an ordinary amendment, which, in the normal course, is "liberally granted under Rules 15(a) and Rule 20[.]" *City of Perth Amboy v. Safeco Ins. Co. of Am.*, 539 F.Supp.2d 742, 746 (D.N.J. 2008). In determining whether to join a party under 28 U.S.C. § 1447(e), courts in this Circuit regularly apply the "flexible and equitable approach developed by the Fifth Circuit Court of Appeals in *Hensgens*[.]" *City of Perth Amboy*, 539 F.Supp.2d at 746; *see Salamone*, 2010 WL 762192 at *1. "The *Hensgens* factors are: (1) the extent to which the purpose of the amendment is to defeat federal jurisdiction; (2) whether plaintiff has been dilatory in asking for amendment; (3) whether plaintiff will be significantly injured if amendment is not allowed; and (4) any other factors bearing on the equities. *Salamone*, 2010 WL 762192 at *1.

    **B.**    <u>**Analysis of *Hensgens* Factors**</u>

        **1.**    **Purpose of Amendment**

The first *Hensgens* factor requires the Court to examine the extent to which the purpose of Plaintiff's request to join nondiverse parties is to defeat federal jurisdiction. "Generally, if a proposed claim is viable, and there is a genuine intent to prosecute the claim in good faith, the primary purpose of joinder is not to defeat federal jurisdiction." *City of Perth Amboy*, 539

F.Supp.2d at 754.  Though courts have viewed plaintiffs' attempts to join dispensable, nondiverse defendants in removed actions where it is apparent that the plaintiffs knew of the nondiverse defendants' activities "'at the time the suit was originally brought in state court, but still chose not to include that party as a defendant . . . as nothing more than an attempt to destroy diversity.'" *Salamone*, 2010 WL 762192 at \*2 (quoting *Norplant Contraceptives Prod. Liab. Litig.*, 898 F.Supp. 429, 431 (E.D. Tex. 1995)).

Here, Plaintiff has viable claims against D&W and it appears he has a genuine intent to prosecute same.  Further, the fact that Plaintiff did not include his malpractice claims against his former attorneys in his initial Complaint is understandable given the fact that at the time Plaintiff filed his Complaint he believed he had workable claims against Connecticut General.  Indeed, it was the District Court's dismissal of Connecticut General from this suit based on the running of the statute of limitations that largely formed the basis of Plaintiff's claims against D&W.  Moreover, no party contends that Plaintiff seeks to join D&W as defendants in order to defeat diversity jurisdiction.  Even SMA and Standard, the parties seeking D&W's dismissal from this action in order to preserve subject matter jurisdiction, "do not accuse Dr. Diodato of adding the D&W defendants in order to defeat diversity[.]" (SMA & Standard Br. at 7).  As such, the first *Hensgens* factor weighs in favor of keeping D&W in this matter.

### 2. Dilatory Conduct

The second *Hensgens* factor is whether Plaintiff was dilatory in seeking the amendment.  In examining dilatory conduct, the Court considers "the length of time as well as the nature of the delay." *City of Perth Amboy*, 539 F.Supp.2d at 748.  SMA and Standard suggest that Plaintiff was dilatory in seeking to add D&W as defendants because Plaintiff did not first move to join

12

D&W until "nearly a year after the case was originally removed" and because, after Plaintiff's first motion was denied, not until "two months after SMA and Standard amended their answers to add failure to mitigate defenses[.]" (SMA & Standard Br. at 7). The Court, however, finds that Plaintiff was not dilatory in seeking to join D&W as defendants.

While just under eleven months passed between this case being removed and Plaintiff first seeking to join D&W as defendants, the length of the delay is, in large part, not directly attributable to Plaintiff. For example, as indicated above, the District Court's dismissal of Plaintiff's claims against Connecticut General formed the basis of Plaintiff's malpractice claims against D&W. The District Court's dismissal of Connecticut General did not occur until November 6, 2009. As such, just under the first four months of the approximate eleventh month delay is accounted for.

As for the remaining seven months, after the District Court dismissed Connecticut General, the Court scheduled a conference with the parties to take place on January 12, 2010. The January 12, 2010 conference represented the parties' first conference with the Court.[6] The Court simply does not fault Plaintiff for failing to file a motion to amend to join D&W prior to the parties' first conference with the Court. As a result, another two months of time are accounted for, leaving only five months in question.

During the January 12, 2010 conference, the Court stayed formal discovery in order to give the parties an opportunity to try to settle the matter. The Court also scheduled another conference for March 25, 2010, which was later adjourned until March 29, 2010. During the

---

[6]On July 20, 2009, three days after this matter was removed, the Court entered an Order setting a Rule 16 conference for September 14, 2009. The Court, however, later adjourned this conference pending the District Court's disposition of Connecticut General's motion to dismiss.

13

March 29, 2010 conference, the parties informed the Court that they participated in a mediation session but that that session was unsuccessful. The fact that Plaintiff did not move to join D&W while the parties were engaged in settlement discussions is completely reasonable and not evidence of dilatory conduct.  As such, an additional two months of the delay are accounted for leaving only two and a half months of time at issue.

During the March 29, 2010 conference, Plaintiff also informed the Court and the other parties of his intention to file a motion to amend his Complaint to join D&W as defendants. Immediately after the March 29, 2010 conference, the Court entered a Pretrial Scheduling Order. In that Order, the Court set June 11, 2010 as the date by which all motions to amend were to be filed.  In accordance with the Court's Pretrial Scheduling Order, Plaintiff moved to amend to join D&W as defendants on June 7, 2010.  In light of the fact that Plaintiff put all parties on notice of his intention to move to join D&W as defendants and then filed that motion within the time frame explicitly set by Order of the Court, the Court finds that Plaintiff was not dilatory in filing his motion on June 7, 2010.  Thus, under the circumstances presented here, despite its length, the nature of the near eleven month delay establishes that it did not result from Plaintiff's dilatory conduct.

Similarly, the Court finds that the two month gap between Standard and SMA being granted permission to amend their Answers to add failure to mitigate defenses and Plaintiff's second motion seeking leave to join D&W as defendants is not indicative of dilatory conduct on Plaintiff's part.  While Plaintiff may have been able to file his second motion to amend in less than two months, given that Plaintiff would have needed some amount of time to prepare his second motion to amend, there would necessarily be a certain delay between SMA and Standard

filing their Amended Answers and Plaintiff filing his second motion to amend. Further, there is no evidence that the purpose of the two month delay was for Plaintiff to unnecessarily prolong this litigation. Consequently, the Court finds that the second *Hensgens* factor favors denying SMA and Standard's request to drop D&W as defendants in this matter.

### 3. Prejudice to Plaintiff

The third *Hensgens* factor is whether Plaintiff will be prejudiced if joinder is denied, or, in this case, if D&W are dismissed from this matter pursuant to Rule 21. The Court agrees with SMA and Standard that Plaintiff will not be unfairly prejudiced if D&W are dismissed from this action. D&W are dispensable parties. If they are dismissed from this matter, Plaintiff is still free to pursue his claims against them in state court. While maintaining concurrent federal and state actions arising out of the same serious of transactions may increase Plaintiff's burden, it simply "would not be a significant injury" under the circumstances of this case. *Salamone*, 2010 WL 762192 at *3. As a result, the third *Hensgens* factor weighs in favor of dismissing D&W from this lawsuit.

### 4. Other Equitable Factors

The fourth *Hensgens* factor requires the Court to consider "any other factors bearing on the equities." *Hensgens*, 833 F.2d at 1182. Here, SMA an Standard argue that the Court should drop D&W from this case to preserve federal jurisdiction because it would be "inefficient to remand the entire case and require the parties to relitigate the same issues over again." (SMA & Standard Br. at 8). Indeed, SMA and Standard claim that remand will "expand considerably" the "additional time and expense" necessary to resolve this case. (*Id*.) Further, SMA and Standard contend that D&W should be dismissed from this matter because if they are not, "SMA and

Standard will have to bear the costs and expense of a 'do-over' for Plaintiff in state court and there are obvious costs to the judicial system in rehearing issues and disputes that have already been resolved." (*Id*.)

While the Court acknowledges that remand may increase the time needed to resolve this case, the Court finds that SMA and Standard have not established that the increase in length will be substantial.  Further, the Court finds no support for SMA and Standard's bald assertion that remand will "considerably" expand the expense of litigating this matter.  To the extent, SMA and Standard contend that remanding this matter would significantly increase the cost of litigation because it would "require the parties to relitigate the same issues over again[,]" their argument fails because they have cited no law in support of same.  Had subject matter jurisdiction been lacking in this case from its inception, then there would be obvious merit to SMA and Standard's contention that remand would lead to the state court "rehearing issues and disputes that have already been resolved." (*Id*.).  Indeed, such a result would be necessary given the lack of jurisdiction.  *See Walton v. Bayer Corp.*, -- F.3d --, No. 10-3462, 2011 WL 1938428, *2 (7th Cir. May 23, 2011) (noting that where remand is based on "absence of federal jurisdiction" over suit, then parties would have to "relitigate the case from scratch" in state court).  Here, however, the Court maintained diversity jurisdiction until D&W were joined as defendants.  Under such circumstances it is unclear why issues and disputes already resolved in this Court prior to D&W's joinder would have to be relitigated in state court.  SMA and Standard cite no law to support this argument and principles of comity would militate against the state court proceedings becoming a "do-over" of matters already litigated here while the Court had subject matter jurisdiction.

The Court recognizes that there may be some inefficiencies and costs associated with remanding this matter to state court. The state court would obviously have to take the time to, colloquially speaking, "get up to speed" on proceedings with which this Court is already familiar. That result obviously puts some strain on the judicial system and increases costs for both the federal and state courts. Said inefficiencies and costs, however, are present in all matters subject to remand under 28 U.S.C. § 1447(e) and certainly alone do not warrant denying joinder or dismissing previously joined dispensable, non-diverse parties such as D&W.

Further, the Court also recognizes that under certain circumstances remand will in fact increase efficiencies and lead to a more economical resolution of the parties' disputes. For example where similar issues will have to be addressed by both the federal and state courts if the nondiverse parties are not joined, joinder and remand may present the most efficient and economical result. The Court finds that this is the case presented here.

Regardless of whether D&W remain defendants, issues concerning their alleged malpractice will have to be addressed because said issues are relevant to SMA and Standard's failure to mitigate defenses.[7] If D&W are dismissed from this action so that federal jurisdiction is preserved, then these issues will have to be addressed by both this Court and the state court, an inefficient result that burdens both. Under these circumstances, the Court finds that there is no overwhelming equitable reason to dismiss D&W from this lawsuit in order to preserve federal jurisdiction. Instead, if anything, the Court finds that the equities favor retaining D&W as defendants and remanding this matter to state court.

---

[7]As noted above SMA and Standard's failure to mitigate defenses arise out of Plaintiff's failure to timely file suit against Connecticut General.

As a result, after considering the parties' competing interests, the Court finds that the *Hensgens* factors weigh in favor of retaining D&W as defendants, granting D&W's motion to remand this action to state court and denying SMA and Standard's request to dismiss D&W from this matter pursuant to Rule 21.

### III. Conclusion

For the reasons stated above, the Court recommends that D&W's motion to dismiss or, in the alternative, remand be GRANTED and that this matter be remanded to state court.

IT IS therefore on this 29th day of June, 2011,

RECOMMENDED that D&W's motion to dismiss or, in the alternative, remand [Docket Entry No. 69] be GRANTED and that this matter be remanded to state court; and it is further

ORDERED that pursuant to L.CIV.R. 72.1(c)(2) and FED.R.CIV.P. 72(b)(2), within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof; and it is further

ORDERED that the Clerk of the Court administratively terminate D&W's motion to dismiss or, in the alternative, remand [Docket Entry No. 69], pending the District Court's acceptance, rejection or modification of the instant Report and Recommendation; and it is further

ORDERED that the Clerk of the Court activate the instant Report and Recommendation so as to indicate that it requires further action by the District Court; and it is further

ORDERED that SMA and Standard's motion for reconsideration is DENIED; and it is further

ORDERED that the Clerk of the Court terminate the aforementioned motion for reconsideration [Docket Entry No. 70] accordingly.

Respectfully submitted,

    s/ Tonianne J. Bongiovanni
**TONIANNE J. BONGIOVANNI**
**UNITED STATES MAGISTRATE JUDGE**